(Lucas Common Pleas, April 6, 1895.

CITY OF TOLEDO FOR USE v. BEAUMONT et al.

---

1. Validity of assessment where same is legal in form although levied on property abutting on one side only of street.

An assesment ordinance for the construction of a sewer provided that the assessment should be made upon the property "bounding and abutting upon the improvement" according to benefits, but the assessment was levied upon the property abutting on one side only of the street whereon the sewer was constructed. Held, In the absence of evidence, showing that the property was not assessed could be benefited by local drainage into said sewer, and that it was not already supplied with local drainage, and therefore exempt from assessment, such assessment was legl in form, and therefore valid.

2 Validity of assessment containirg charges for material not used.

A sewer assessment, which includes excessive charges for lumber, not in fact used in sewer, is inavlid to the extent of such charges.

---

PRATT, J.

This action was brought in the name of the city for the use of the contractor, against a number of property owners to recover a personal judgment against each for the amount assessed against property owned by him for the construction of a sewer in Harrison street, Mill street and Mill alley, and

for an order for the sale of the property for payment of the assessment.

: The petition is in the ordinary form, setting forth in detail the legislation of the council providing for the construction of the sewer, and the making and confirmation of the assessment.

The answer sets up two defenses:

1. That there is included in the assessment $500 for lumber that never was used in the sewer; that this was known to the contractor, the city civil engineer and other officers of the city, before and at the time of the making and confirmation of the assessment; that the property holders objected and protested against the assessment, but that it was nevertheless confirmed.

2.. That the assessment was not made upon all the abutting property, and the amount against their porperty greatly exceeded the special benefits conferred.

The reply admitted the making of the protest, but alleged that it was not well taken, and denied all other allegations of the answer.

The case had been tried upon these issues, and a large amount of oral testimony, in addition to the record evidence, has been heard. The determination of the controversy requires decision upon two points:

1. Was the assessment made upon the property valid?

The preliminary resolution was in the usual form, providing that the assessment be made upon the property benefited.

. The ordinance was also in the usual form, except that instead of reading that the assessment should be made upon the property benefited, there was interlined in the printed blank the words, "bounding and abutting upon the improvement" according to benefits.

. The assessment was made upon the property abutting on one side only of Mill street and Mill alley, and this fact involves two questions:

a. Is this in compliance with the ordinance, or did that require it to be made on all the abutting property?

b. Is it competent, in view of the provision of the statute that all property abutting on a sewer may make connection under prescribed regulations, for the council to assess the entire expense upon the property on one side only, under any form of legislation?

I find it is not necessary here to determine these questions as they might apply to cases that may be made, for the reason that no evidence has been offered in this case to show that the property not assessed could be benefited by local drainage or his sewer, and no esimony to show that it is not already fully supplied with local drainage, and therefore exempt from further assessment. There is some evidence that at one point surface drainage from non-assessed abutting property may run into the sewer, but I think this is only incidental benefit, if any, and that the presumption in favor of the assess-

ment must prevail and the assessment be held legal in form.

2. The more difficult question is whether this assessment is invalid by reason of excessive charges for lumber not in fact used in the sewer.

Excluding cents from the computation, the total cost assessed against the property was $2,819 and of this $447 was charged for lumber left in the sewer. The total cost included the entire labor on the sewer, excavation, filling in, laying brick, the cost of the brick, iron and all materials, man holes, etc.. and the proportion of the costs of the lumber alone is between a sixth and a seventh of the whole expense of the entire construction.

The testimony of a number of the property owners living upon the line of the sewer, and who saw the work from day to day as it progressed, showed conclusively that there was no appreciable quantity of lumber left in the sewer. Lumber was used to brace the sides of the excavation while the sewer was being laid, but before filling in, this lumber, as was shown, was moved along from section to section, none being left in the sewer except at one end where the ground was soft, and where a few planks were buried in the sewer. The sewer bed also was dug into in making connections and also during the trial or examination, and in no place except at the part named had lumber been found, and then but a few pieces. To meet this evidence the engineer in charge of the work was placed on the stand, and produced a book purporting to be a record of lumber left in the sewer. By this it appeared that there was in every section of the 139, except in nineteen of them, from one to six sets of plank, with two or three cross-braces to each. But the engineer testified that his record was taken from the inspector in charge, who reported to him as he went to the work from day to day, but where he would remain but a short time, and he did not know personally of its correctness. The inspector was evidently a man of very limited capacity, and kept no record himself, and his testimony was very unsatisfactory. The property owners protested to the city engineer against these charges for lumber, and told him they knew the lumber was not in the sewer. They also notified the committee on sewers and some of the members of the city council, but no investigation was made and the assessment was confirmed. The contractor introduced some evidence as to the lumber having been drawn there from another sewer, and also as to some purchased. but could give no accurate meaurement himself testifying that he trusted the matter to the inspector. On the whole evidence I find it clearly and satisfactorily proven that this record is wholly unreliable, that no considerable portion of the lumber charged for was left in the sewer, and that the charge made is unjust, and that the enforcement of the assessment as made would operate as a fraud upon the property owners. I further find that this is the

result of the incompetency of the inspector, the gross carelessness of the engineer in charge of the work, and the gross neglect of the city civil engineer, committee on sewers and members of the city council.

Finding this, although I do not find that there was any actual intentional fraud or collusion between any of the officers of the city and the contractor, yet I do hold that there was such disregard of the rights of the property holders, as results in fraud as against them, and that it is the province and duty of the court to grant the relief which was denied them by the city officials, and which they now seek at the hand of the court.

Section 2289 was intended to apply to such a case, and while it is true that the defendants here have been benefited by this improvement, it is also true hat satisfactory evidence has not been given as to the amount of lumber left in this sewer and for which by, the terms of the contract, payment was to be made; but it was the duty of the contractor, in the face of the evidence given by the property holders, to have furnished this proof. He not having done this, and the court being satified that the amount was inconsiderable, the decision of the court is, that the $447 charged to the property owners be wholly deducted and judgment rendered against each lot owner for such amount as would have been assessed against his property independent of this amount and also order of sale. The judgment will include interest from the date on which the as sessment was made, but no penalty, and each party to pay his own costs.

Kinney & Newton, for Plaintiff.

J. H. Southard, for Defendant.